# Exhibit 5

SUPPLEMENTAL REPORTER'S RECORD

VOLUME 13 OF 13 VOLUMES

TRIAL COURT CAUSE NO. 8701

COURT OF CRIMINAL APPEALS NO. WR-50,961-10

|  |  |
|---|---|
| | ) 21st DISTRICT COURT |
| | ) |
| | ) |
| | ) |
| EX PARTE RODNEY REED | ) OF |
| | ) |
| | ) |
| | ) |
| | ) BASTROP COUNTY, TEXAS |

-------------------------------

WRIT OF HABEAS CORPUS

CLOSING ARGUMENTS

October 18, 2021

-------------------------------


    BE IT REMEMBERED THAT on the October 18, 2021, the

following proceedings came on to be heard in the

above-entitled and numbered cause before the Honorable

J.D. Langley, Visiting Judge of the 21st District

Court, held in Bastrop, Bastrop County, Texas.


    Proceedings reported by machine shorthand by

Hayley Stiteler, CSR, RPR.

```
  1              A P P E A R A N C E S

  2
     FOR THE APPLICANT:
  3

  4       Mr. Andrew F. MacRae
          LEVATINO | PACE LLP
  5       1101 South Capital of Texas Highway
          Building K, Suite 125
  6       Austin, Texas 78746
          512.6371581
  7       amacrae@levatinopace.com
          SBOT NO. 00784510
  8

  9       Ms. Jane Pucher
          INNOCENCE PROJECT
 10       40 Worth Street, Suite 701
          New York, New York 10013
 11       646.227.8327
          jpucher@innocenceproject.org
 12

 13
          Mr. George H. Kendall
 14       SQUIRE PATTON BOGGS, LLP
          1211 Avenue of the Americas
 15       New York, New York 10036
          212.872.9834
 16       george.kendall@squirepb.com

 17

 18       Ms. Michelle L. Davis
          SKADDEN, ARPS, SLATE, MEAGHER & FLORM, LLP
 19       1000 Louisiana, Suite 6800
          Houston, Texas 77002
 20       713.655.5100
          michelle.davis@skadden.com
 21       SBOT NO. 24038854

 22
          ALSO PRESENT:
 23
          Ms. Nika Cohen
 24

 25
```

```
 1    FOR THE STATE:

 2
        Ms. Lisa M. Tanner
 3      TEXAS OFFICE OF THE ATTORNEY GENERAL
        P.O. Box 12548
 4      Austin, Texas 78711
        512.463.2125
 5      lisa.tanner@oag.texas.gov
        SBOT NO. 19637700
 6

 7
        Mr. Travis G. Bragg
 8      TEXAS ATTORNEY GENERAL
        ASSISTANT ATTORNEY GENERAL
 9      P.O. Box 12548
        Austin, Texas 78711
10      512.936.1400
        SBOT NO. 24076286
11

12
        Mr. Edward L. Marshall
13      OFFICE OF THE ATTORNEY GENERAL
        CRIMINAL APPEALS DIVISION
14      P.O. Box 12548
        Austin, Texas 78711
15      512.936.1400
        edward.marshall@oag.texas.gov
16      SBOT NO. 00797004

17
        Mr. Garrett Greene
18      OFFICE OF THE ATTORNEY GENERAL
        CRIMINAL APPEALS DIVISION
19      300 West 15th Street
        Austin, Texas 78701
20      512.936.1400
        garrett.greene@oag.texas.gov
21      SBOT NO. 24096217

22

23

24

25
```

**INDEX OF PROCEEDINGS**
VOLUME 13
(CLOSING ARGUMENTS)

October 18, 2021                                    **Page   Vol**

APPEARANCES...................................  2    13


                                                   **Page   Vol**

APPLICANT'S CLOSING ARGUMENT BY MR. MACRAE....  6    13

THE STATE'S CLOSING ARGUMENT BY MR. BRAGG ....  21   13

APPLICANT'S CLOSING ARGUMENT BY MS. PUCHER.... 111   13

APPLICANT'S CLOSING ARGUMENT BY MR. MACRAE.... 139   13


REPORTER'S CERTIFICATE........................181

There is our tenth writ for heaven's sake, and there's been no delay whatsoever.  Many of the witnesses you heard from were identified just days before the execution date.  And there is no prejudice.  The State was unable to identify any witness or any evidence that they could not present if this case was tried again.

Yes, some people have passed away.  Those people, their evidence is already in the record.  There's no prejudice whatsoever.  If Mr. Reed were to be retried, the State could call every witness that they've already called.

The evidence, Your Honor, is that Mr. Reed has been erroneously incarcerated, and that outweighs laches.  The United States Supreme Court told us numerous times that public interest in preventing erroneous incarceration and execution far outweighs the government's interest in finality.  So laches doesn't apply.

Your Honor, I'm going to sit down at this point.  And then, after the State presents, Ms. Pucher is going to talk more about the science and I'm going to talk more about the credibility of the witnesses.

MR. BRAGG:  May it please the Court.

would have been torn asunder, would have not been
intact if it had indeed been deposited there a couple
of days prior.  But that was the testimony that was
had at trial based on the scientific article that was
discussed at trial and the testimony you heard here
during the hearing and the article that was discussed
during the hearing back in July now.  That is not new
evidence.  That is not new testimony.  That is not new
scientific principles.  There's nothing new about it.

          But moving past that point, it's also
important to note that Blakely clarified her testimony
at trial.  The issue was put before the jury.  It's
been put before the CCA in multiple writs and roundly
rejected.  And indeed another important factor that
Dr. Dana discussed is how the studies that were relied
upon, they actually -- to be fair, it would be almost
impossible to do this.  But the State cannot account
for what happens to spermatozoa when a person dies
and, also, importantly, when a person dies while and
exerting extreme effort -- factors that were very
important here.

          Finally, the anal injuries.  Everyone
agrees that dilatation can occur naturally at the time
of death.  All four experts did agree on that.  But,
again, this is not new.  This is not new scientific

 1  principles.  It's not even new testimony.  And
 2  Drs. Dana and Farley were willing to admit that the
 3  pictures were actually too poor to fully, without
 4  100 percent certainty, say what those lacerations --
 5  or, again, to say whether or not those indeed were, in
 6  fact, lacerations.  You heard Reed's expert,
 7  Dr. Baker, talk about how those are actually markings
 8  that you would expect to see in an anus.  You heard
 9  Dr. Dana say "To me that it does not look like those
10  caverns, those markings that you would expect to just
11  naturally be present."
12          It does look more like lacerations.  But
13  those two doctors, Dana and Farley, agree that they
14  did not -- the picture quality was too poor to say
15  with 100 percent certainty.  Again, Dr. Bayardo
16  remains the best person to be able to say what exactly
17  was there.
18          Now, I'd like to leave -- and, you know,
19  again, just to be clear, that evidence goes to -- as
20  it was pled by Reed in his tenth writ, that evidence,
21  the scientific forensic evidence, goes to his
22  actual-innocence claim.
23          What I'd like to do now is leave the
24  actual-innocence claim for a bit and go to the Brady
25  claim.  I'd like to discuss, first, Richard Derleth.

1    presented sufficient evidence to meet the Schlup

2    standard, and we ask that the Court consider that in

3    reviewing and rendering its own findings of fact.

4                 Thank you.

5                 THE COURT:  Proceed, Mr. MacRae.

6                 MR. MACRAE:  Your Honor, you observed

7    more than once during our hearing in July that one of

8    the big issues in this case is the credibility of the

9    witnesses.  And we said, don't forget the science.

10   And Ms. Pucher has just talked to you about the

11   science.  But I want to talk to you about the

12   credibility of the witnesses, at the risk of preaching

13   to the choir, because I know you know how to determine

14   the credibility of the witnesses.

15                I also assume, Your Honor, that you are

16   evaluating the credibility of not just the witnesses

17   and the evidence, but the people putting it on.  The

18   reason I bring that up is because this morning you

19   were asked, even though you have said you will not

20   consider the unadjudicated offenses for which Mr. Reed

21   was charged, for which he had no attorney appointed,

22   and were not investigated -- even though you said you

23   weren't going to consider those, you should now

24   consider them because Mr. Reed did not make consent an

25   issue at trial.  That's what counsel said.  That is

1    Mr. Weems, from the State's witnesses,

2    he corroborates the Sappingtons' story.  When the

3    Sappingtons came in and testified, Mr. Weems was not

4    quite on board with what Mr. Sappington said about --

5    hush his mouth, but he agreed that the Sappingtons are

6    good, fine, honest people, and he would never doubt

7    their integrity.  That's corroboration.

8    Jimmy Fennell is corroborated by no one.

9    He's the only person who saw Stacey Stites alive after

10   9:00 p.m. that night.  No one can vouch for his

11   whereabouts at any time during that time.  Everything

12   he says is uncorroborated.

13   Now, his family came in and testified.

14   And his sister actually contradicted him, which I'll

15   get to in a moment.  But his family testified,

16   presumably to corroborate him; and his sister said, "I

17   can't imagine he could commit a murder."  But then I

18   asked her, "Well, did you believe he could kidnap and

19   rape someone either?"  And she said, well, she didn't

20   believe that either.

21   And you've got the mom, Mrs. Fennel, who

22   said, "Well, I've always been proud of Jimmy," which

23   is a bit of a stretch when someone kidnaps and rapes

24   someone in their custody.

25   And then, of course, Mr. Brown, the

1  cousin, came in and testified that Mr. Fennell was a

2  real man, even when he kidnapped and sexually

3  assaulted someone.

4          Those witnesses were not helpful to him.

5  They did not corroborate him.  He's the lone voice.

6          And in response to the suggestion that

7  Mr. Fennell was the jealous and controlling type, they

8  didn't bring forward one witness, not one.

9          So how did the State counter all this

10  evidence, Your Honor?  They didn't.  They didn't bring

11  any people who spent time with Ms. Stites and

12  Mr. Fennell together, other than, of course,

13  Mr. Fletcher, who we brought, who said that

14  Mr. Fennell said something horrible.

15          They brought Mr. Augustine, who went on

16  a four-day training with Ms. Stites 25 years ago.

17  That was the extent of his knowledge of that lady,

18  four days with her in training.

19          And they brought the H-E-B manager to

20  say, "Well, police actually didn't talk with more than

21  85 percent of the H-E-B staff and only nine women."

22  So when Mr. Bragg is telling you that there are

23  people -- that law enforcement is crawling -- that was

24  his term.  He used it at least twice this morning --

25  crawling over the H-E-B, Mr. Haas comes in and says,