# Exhibit 6

1

CAUSE NO. 8701 73135

THE STATE OF TEXAS   X   IN THE DISTRICT COURT OF
                           X
VS.                         X   BASTROP COUNTY, TEXAS
                           X
RODNEY REED           X   21ST JUDICIAL DISTRICT

REPORTER'S RECORD
JURY TRIAL
GUILT/INNOCENCE

MAY 6, 1998

MORNING SESSION

VOLUME 47 OF 69

FILED IN
COURT OF CRIMINAL APPEALS
SEP 9 1998
Troy C. Bennett, Jr., Clerk

ORIGINAL

On the 6th day of May, 1998, the above entitled and numbered cause came on for hearing before said Honorable Court, Harold R. Towslee, Judge Presiding, and the following proceedings were had:

Volume 47 of **69**

GUILT/INNOCENCE PHASE

(PAGES 1 THROUGH 124)

```
 1   APPEARANCES:

 2                   For the State

 3        Mr. Charles Penick
          District Attorney, Bastrop County
 4        804 Pecan Street
          Bastrop, Texas   78602
 5        SBOT #015748500
          (512) 321-2244
 6


 7        Mr. Forrest Sanderson
          Assistant District Attorney
 8        804 Pecan Street
          Bastrop, Texas   78602
 9        SBOT #17610700
          (512) 321-2244
10


11        Ms. Lisa Tanner
          Assistant Attorney General
12        P. O. Box 12548
          Austin, Texas   78711-2548
13        SBOT #19637700
          (512) 463-2170
14

15

16                  For the Defendant

17        Mr. Calvin Garvie
          Attorney at Law
18        22 N. Bell St., P. O. Box 416
          Bellville, Texas   77418
19        SBOT #07714300
          (409) 865-9781
20

21        Ms. Lydia Clay-Jackson
          Attorney at Law
22        700 N. San Jacinto
          Conroe, Texas   77301
23        SBOT #04332450
          (409) 760-2889
24

25
```

```
 1                    CHRONOLOGICAL INDEX
 2     WITNESS                                              PAGE
 3     APPEARANCES                                          3
 4     MORNING SESSION                                      7
 5
 6     APPLICATION FOR ATTACHMENT                           7
 7     RULING                                               7
 8
 9     TERRY SANDIFER
10     DIRECT EXAMINATION BY MR. SANDERSON                  8
11     CROSS-EXAMINATION BY MR. GARVIE                      52
12     REDIRECT EXAMINATION BY MR. SANDERSON                63
13     RECROSS EXAMINATION BY MR. GARVIE                    69
14
15     RECESS                                               71
16
17     GENE LAWRENCE
18     DIRECT EXAMINATION BY MR. PENICK                     72
19     CROSS-EXAMINATION BY MR. GARVIE                      87
20
21     STEVE ROBERTSON
22     DIRECT EXAMINATION BY MS. TANNER                     93
23     CROSS-EXAMINATION BY MR. GARVIE                      98
24     REDIRECT EXAMINATION BY MS. TANNER                   100
25     RECROSS EXAMINATION BY MR. GARVIE                    101
```

GREG CORNER

DIRECT EXAMINATION BY MS. TANNER     105


JENNIFER CORNER

DIRECT EXAMINATION BY MR. SANDERSON     117

CROSS-EXAMINATION BY MR. GARVIE     121


COURT ADJOURNED FOR A LUNCH BREAK     123

COURT REPORTER'S CERTIFICATE     124

<pre>                                                              6</pre>

EXHIBIT INDEX

VOLUME 47

* All State's Exhibits marked prior to trial in Volume 43, Page 7. (Volume No./Page No.)

| No. | Description | *Mrkd | Idnt'd | Ofrd | Admit |
|---|---|---|---|---|---|
| S-77a | Piece of cup | 43/7 | 44 | 45 | 45 |
| S-77b | Piece of cup | 43/7 | 44 | 45 | 45 |
| S-78 | Bridal Receipt | 43/7 | 46 | 46 | 47 |
| S-79 | Portrait Receipt | 43/7 | 47 | 47 | 48 |
| S-104 | Small piece of belt | 43/7 | 84 | 85 | 85 |
| S-110a | Check Carbon | 43/7 | 66 | 66 | 67 |
| S-110b | Check Carbon | 43/7 | 66 | 66 | 67 |
| S-110c | Check Carbon | 43/7 | 66 | 66 | 67 |
| S-111 | Utility Receipt | 43/7 | 65 | 65 | 66 |
| S-112a | Wal-Mart Receipt | 43/7 | 64 | 64 | 64 |
| S-112b | Wal-Mart Receipt | 43/7 | 64 | 64 | 64 |
| S-112c | Wal-Mart Receipt | 43/7 | 64 | 64 | 64 |
| D-7 | One-page Report | 60 | 60 | 61 | 61 |
| D-8 | One-page Report | 60 | 60 | 61 | 61 |
| D-9 | Report | 91 | 91 | 92 | 92 |
| D-10 | Lab Report | 102 | 102 | 102 | 102 |

1                     THE COURT: Please be
2 seated.
3                     MS. CLAY-JACKSON: It's come
4 to my attention that I may be doing something
5 -- inadvertently doing something that is
6 causing the jurors some discomfort. If that
7 is, in fact, happening, could you ask them to
8 send you a written note so I don't continue
9 doing something like that.
10                    THE COURT: I can't imagine
11 what that might be, but if there is something
12 like that, let me know, maybe through the
13 bailiff or something like that.
14         Who is your next witness?
15                     MR. SANDERSON: The State
16 calls Terry Sandifer.
17                     THE COURT: If you'll let me
18 swear you in before you testify. Please have
19 a seat right over here.
20
21      <u>TERRY SANDIFER</u>, the witness, after having
22 first been duly sworn, assumed the witness stand
23 and testified upon her oath as follows:
24
25                <u>DIRECT EXAMINATION</u>

```
 1   QUESTIONS BY FORREST SANDERSON:

 2

 3                    THE COURT:  Ma'am, will you
 4        try to speak right into that microphone so
 5        that we can all hear you.  You might have to
 6        scoot your chair up a little closer to it.
 7   Q.   Ms. Sandifer, will you please start by telling
 8        us your full name?
 9   A.   Terry Sandifer.
10   Q.   And you spell Terry, T-E-R-R-I; is that
11        correct?
12   A.   T-E-R-R-Y.
13   Q.   And Sandifer?
14   A.   Sandifer, S-A-N-D-I-F-E-R.
15   Q.   Let me begin by asking you where you are
16        employed?
17   A.   At the Texas Department of Public Safety in
18        Austin.
19                    MR. GARVIE:  Your Honor, may
20        we approach?
21                    THE COURT:  Yes.
22
23                    (Whereupon a brief discussion
24                    was held off the record.)
25
```

```
1    Q.    Item number 6?
2    A.    Big Red gum pack.
3    Q.    And item number 7?
4    A.    A lifted latent that I had lifted.
5    Q.    Okay.  Now, were these items -- how were these
6          items collected, do you know or have any
7          report on that?  I'm talking about the items
8          on the 5-30-96?
9    A.    Right.  This was an investigation that we did,
10         and I collected them.
11   Q.    Okay.  And from where did you collect them?
12   A.    From a blue Chevy truck.
13   Q.    Okay.  All right.  Now, you have already
14         mentioned that during that period of time from
15         April the 23rd to May the 30th, at various
16         different times, you were -- there were sent
17         to you names of individuals and either their
18         fingerprint or their palm print, is that
19         correct?
20   A.    Correct.
21   Q.    About how many people altogether were you
22         given the names of and the samples of?
23   A.    Approximately eight different people.
24   Q.    Okay.  And was one of those persons a Jimmy
25         Fennell?
```

1  A.  Yes.
2  Q.  Was one of those persons a Stacey Stites?
3  A.  Yes.
4  Q.  Was one of those persons a William Barton?
5  A.  Yes.
6  Q.  Was one of those persons a David Lawhon?
7  A.  Yes.
8  Q.  Okay.  Now, with regard to all of those
9      persons that you had samples from, were you
10     able to make a comparison with all the items
11     that we have listed against all those names
12     that we have talked about to see if there was
13     any match that you could make on the pickup
14     truck or on any of the items collected from
15     the pickup truck or at the scene of the crime?
16 A.  Yes.
17 Q.  And did you get any positive comparisons?
18 A.  Yes.
19 Q.  And who were they?
20 A.  I found prints of Stacey Stites and Jimmy
21     Fennell.
22 Q.  Okay.  And let's talk about, now, the specific
23     pieces of evidence that you did find their
24     prints on.  Let's start with item number 28.
25     What was item number 28 again?

1  A.  A carbon copy of a check.
2  Q.  Okay. And that was check number 171, is that
3      right?
4  A.  Correct.
5  Q.  And whose prints did you find on that check?
6  A.  I found Jimmy Fennell's prints.
7  Q.  And whose name was on that check, by the way?
8  A.  I do not recall.
9  Q.  Do you know whose pickup truck that check was
10     found in?
11 A.  Yes.
12 Q.  And who was that?
13 A.  Jimmy Fennell's.
14 Q.  Okay. And item number 37 was what -- I'm
15     sorry, 37b?
16 A.  A family portrait certificate.
17 Q.  Okay. And whose prints did you find on that?
18 A.  Stacey Stites.
19 Q.  All right. And item number 38a, what was that
20     item?
21 A.  A utility receipt.
22 Q.  Did that receipt, if you happen to know, have
23     anyone's name mentioned on it?
24 A.  I don't have a note of that.
25 Q.  Okay. And where was the receipt found?

| | | |
|---|---|---|
| 1 | A. | The front passenger floorboard of the S-10 |
| 2 | | truck. |
| 3 | Q. | Okay. And whose prints were on that? |
| 4 | A. | Both Jimmy Fennell's and Stacey Stites. |
| 5 | Q. | And item number 43a? |
| 6 | A. | Wal-Mart receipt. |
| 7 | Q. | And whose prints were on the Wal-Mart receipt? |
| 8 | A. | Jimmy Fennell's. |
| 9 | Q. | And where was that found? |
| 10 | A. | In his truck. |
| 11 | Q. | Okay. Item number 43a was also a Wal-Mart |
| 12 | | receipt. Did you find prints on that -- I'm |
| 13 | | sorry, 43b? |
| 14 | A. | Yes. |
| 15 | Q. | And whose prints did you find on that? |
| 16 | A. | Jimmy Fennell. |
| 17 | Q. | 49a, did you find any receipts on that receipt |
| 18 | | -- I'm sorry, any prints on that receipt? |
| 19 | A. | Yes. |
| 20 | Q. | And whose were they? |
| 21 | A. | Stacey Stites. |
| 22 | Q. | All right. And I believe the last item that |
| 23 | | you found prints on was item number 50, the |
| 24 | | HEB ID tag, and whose prints were on that? |
| 25 | A. | Stacey Stites. |

```
 1   Q.   Okay.  Now, with regard to all the items that
 2        you analyzed and mentioned in your report
 3        dated September the 17th, 1996, did you find
 4        any other suitable print that you were able to
 5        do an analysis for?
 6   A.   No.
 7   Q.   Let me have you turn now to a report that's
 8        dated February the 20th, 1998.  Are you with
 9        me?
10   A.   (Witness nods head in the affirmative.)
11   Q.   Let's talk about the evidence that you have in
12        the middle of the page that you were given to
13        analyze.  Item number 8 was what?
14   A.   A white cotton T-shirt.
15   Q.   Okay.  Item Number 11 through -- or 11 dash 4
16        was a what?
17   A.   A bradded portion of the belt.
18   Q.   Okay.  Item number 17?
19   A.   A pair of green panties.
20   Q.   Okay.  Item number 18 dash 3?
21   A.   A bradded portion of a belt.
22   Q.   Item number 33 and 34?
23   A.   Pieces of a green cup.
24   Q.   Okay.  Now, with regard to these individual
25        items, were you given comparison prints from
```

```
 1            somebody else to analyze?
 2   A.       Yes.
 3   Q.       Okay.  And who was this new person that you
 4            were given comparison samples from?
 5   A.       Rodney Reed.
 6   Q.       Okay.  Were they fingerprints only or
 7            fingerprints and palm prints?
 8   A.       Both fingerprints and palm prints.
 9   Q.       Did you find any of Rodney Reed's fingerprints
10            or palm prints on these items that you just
11            now listed?
12   A.       No.
13   Q.       Did you have a chance to go back to the items
14            that we talked about before and compare to see
15            if Rodney Reed's fingerprints or palm prints
16            matched any of the other items, including the
17            pickup truck?
18   A.       Yes, I did have a chance to go back.
19   Q.       And did you find his fingerprints or palm
20            prints anywhere there?
21   A.       No.
22   Q.       Did you find any fingerprints or palm prints
23            that were suitable for analysis on those items
24            that we just talked about, the white cotton
25            shirt, belt buckle -- or belt with the buckle
```