# Exhibit 18

CAUSE NO. 8701

**73135**

| | | |
|---|---|---|
| THE STATE OF TEXAS | X | IN THE DISTRICT COURT OF |
| | X | |
| VS. | X | BASTROP COUNTY, TEXAS |
| | X | |
| RODNEY REED | X | 21ST JUDICIAL DISTRICT |

---

REPORTER'S RECORD
JURY TRIAL
GUILT/INNOCENCE

---

MAY 11, 1998

MORNING & AFTERNOON SESSIONS

VOLUME 51 OF 69

FILED IN
COURT OF CRIMINAL APPEALS
SEP 9 1998
Troy C. Bennett, Jr., Clerk

ORIGINAL

```
 1              On the 11th day of May, 1998, the
 2   above entitled and numbered cause came on for
 3   hearing before said Honorable Court, Harold R.
 4   Towslee, Judge Presiding, and the following
 5   proceedings were had:
 6
 7
 8
 9              VOLUME 51 OF 69
10
11           GUILT/INNOCENCE PHASE
12
13            (PAGES 1 THROUGH 156)
```

```
 1  APPEARANCES:

 2              For the State

 3              Mr. Charles Penick
                District Attorney, Bastrop County
 4              804 Pecan Street
                Bastrop, Texas   78602
 5              SBOT #015748500
                (512) 321-2244
 6


 7              Mr. Forrest Sanderson
                804 Pecan Street
 8              Bastrop County Courthouse
                Bastrop, Texas   78602
 9              SBOT #17610700
                (512) 321-2244
10


11              Ms. Lisa Tanner
                Assistant Attorney General
12              P. O. Box 12548
                Austin, Texas   78711-2548
13              SBOT #19637700
                (512) 463-2170
14

15


16              For the Defendant

17              Mr. Calvin Garvie
                Attorney at Law
18              22 N. Bell St., P. O. Box 416
                Bellville, Texas   77418
19              SBOT #07714300
                (409) 865-9781
20


21              Ms. Lydia Clay-Jackson
                Attorney at Law
22              700 N. San Jacinto
                Conroe, Texas   77301
23              SBOT #04332450
                (409) 760-2889
24

25
```

CHRONOLOGICAL INDEX

| WITNESS | PAGE |
|---|---|
| APPEARANCES | 3 |
| MORNING SESSION | 8 |
| L. R. (ROCKY) WARDLOW (RECALLED) | |
| FURTHER REDIRECT EXAMINATION BY MS. TANNER | 9 |
| FURTHER RECROSS EXAMINATION BY MR. GARVIE | 14 |
| MEGHAN CLEMENT | |
| DIRECT EXAMINATION BY MS. TANNER | 16 |
| RECESS | 57 |
| CROSS EXAMINATION BY MR. GARVIE | 58 |
| REDIRECT EXAMINATION BY MS. TANNER | 74 |
| RECROSS EXAMINATION BY MR. GARVIE | 87 |
| FURTHER REDIRECT EXAMINATION BY MS. TANNER | 90 |
| STATE RESTS | 90 |
| RECESS | 92 |
| MOTION FOR DIRECTED VERDICT | 94 |
| COURT ADJOURNED FOR A LUNCH BREAK | 95 |

| | | |
|---|---|---|
| 1 | AFTERNOON SESSION | 96 |
| 2 | | |
| 3 | DAVID LAWHON | |
| 4 | COURT'S QUESTIONING OUTSIDE PRESENCE OF JURY | 96 |
| 5 | | |
| 6 | RONNIE DUNCAN (OUTSIDE PRESENCE OF JURY) | |
| 7 | DIRECT EXAMINATION BY MS. CLAY-JACKSON | 100 |
| 8 | | |
| 9 | PATTY ANN TIMMONS | |
| 10 | DIRECT EXAMINATION BY MR. GARVIE | 104 |
| 11 | CROSS EXAMINATION BY MS. TANNER | 112 |
| 12 | REDIRECT EXAMINATION BY MR. GARVIE | 116 |
| 13 | RECROSS EXAMINATION BY MS. TANNER | 118 |
| 14 | FURTHER REDIRECT EXAMINATION BY MR. GARVIE | 120 |
| 15 | | |
| 16 | ROBERT ROBBINS | |
| 17 | DIRECT EXAMINATION BY MR. GARVIE | 121 |
| 18 | CROSS EXAMINATION BY MS. TANNER | 126 |
| 19 | REDIRECT EXAMINATION BY MR. GARVIE | 131 |
| 20 | RECROSS EXAMINATION BY MS. TANNER | 132 |
| 21 | | |
| 22 | JULIA ESTES | |
| 23 | DIRECT EXAMINATION BY MS. CLAY-JACKSON | 133 |
| 24 | CROSS-EXAMINATION BY MS. TANNER | 136 |
| 25 | | |

CAROL STITES (RECALLED)

FURTHER RECROSS EXAMINATION
          BY MS. CLAY-JACKSON                          141
FURTHER REDIRECT EXAMINATION BY MS. TANNER             152


COURT ADJOURNED FOR THE DAY                            155
COURT REPORTER'S CERTIFICATE                           156

## EXHIBIT INDEX

## EXHIBIT 51

\* All State's Exhibits marked prior to beginning of trial in Volume 43, Page 7. (Volume No./Page No.)

| No. | Description | *Mrkd | Idnt'd | Ofrd | Admit |
|---|---|---|---|---|---|
| S-103 | Large Chart | 43/7 | 39 | 39 | 40 |
| S-106 | Blowup of Letter | 43/7 | 81 | 82 | 82 |

```
 1         MEGHAN CLEMENT, the witness, after having
 2   first been duly sworn, assumed the witness stand
 3   and testified upon her oath as follows:
 4
 5              DIRECT EXAMINATION
 6   QUESTIONS BY MS. TANNER:
 7   Q.   Would you state your name for the jury,
 8        please.
 9   A.   My name is Meghan Clement.
10   Q.   And how are you employed?
11   A.   I'm employed as an assistant director at
12        Laboratory Corporation of American Holdings,
13        Incorporated, which has the trademark name of
14        LabCorp.
15   Q.   And how long have you been employed by
16        LabCorp?
17   A.   Since November of 1994.
18   Q.   And, if you would, tell the jury, basically,
19        what LabCorp is?
20   A.   LabCorp is a medical diagnostic company.  We
21        have various types of services that are
22        available, the biggest is when you go to the
23        doctor's office and get blood drawn the blood
24        is then sent to the laboratory for
25        determination of cholesterol levels --
```

analysis, when you're looking at that microscopically, are you trying to determine whether spermatozoa, number one, are present; and, number two, whether they're intact or broken up?

A. Yes.

Q. What is the significance of whether spermatozoa are intact or whether they're broken up?

A. Generally the longer spermatozoa is -- the longer amount of time of it being deposited to it being detected the more likely it's not going to be intact. With spermatozoa, the tails are very fragile and tend to break off, so after a short period of time they start losing their tails and then what you find is only the spermatozoa heads, from sexual assault cases. So that can be an indicator of how long the spermatozoa has been in a particular place before it is actually collected and detected.

Q. And in the thousands of rape kits that you have looked at, when a vaginal swab is taken in the traditional way that it's taken, what's the longest time that you ever personally saw

| | |
|---|---|
| 1 | a lapse between a sexual encounter and in |
| 2 | finding a fully intact spermatozoa? |
| 3 | MR. GARVIE: Objection; |
| 4 | information in other cases is not relevant in |
| 5 | this case. |
| 6 | THE COURT: Overruled. Go |
| 7 | ahead, ma'am. |
| 8 | A. In serology work, typically, sexual assault |
| 9 | kits weren't even collected more than 24 hours |
| 10 | after an encounter because the chances of |
| 11 | finding sperm is so rare. Generally, finding |
| 12 | intact sperm at more than probably about 20 |
| 13 | hours, 20 to 24 hours, I don't ever recall |
| 14 | finding intact sperm more than that, from the |
| 15 | time of the sexual assault and from the time |
| 16 | the collection was made. |
| 17 | Q. And that was in over thousands of rape kits? |
| 18 | A. Yes. |
| 19 | Q. Ms. Clement, I want to ask you, finally, based |
| 20 | on everything that you've seen in this case, |
| 21 | and the calculations that you've made, what is |
| 22 | your opinion with regard to whether anyone |
| 23 | other than the person identified as Rodney |
| 24 | Reed could have left the semen in the body of |
| 25 | Stacey Stites? |

MR. GARVIE: Nothing further.

THE COURT: You may be excused. That's all, sir.

(Whereupon the witness was excused from the stand.)

THE COURT: Who is your next witness?

MS. CLAY-JACKSON: Julia Estes.

THE COURT: Ma'am, please come up here and let me swear you in before please have a seat right over there.

JULIA ESTES, the witness, after having first been duly sworn, assumed the witness stand and testified upon her oath as follows:

DIRECT EXAMINATION

QUESTIONS BY MS. CLAY-JACKSON:

Q. Would you state your name, please, spelling your last.

A. Spell my last name?

| | | |
|---|---|---|
| 1 | Q. | Please. |
| 2 | A. | E-S-T-E-S, Julia Estes. |
| 3 | Q. | And, Ms. Estes, are you a resident of Bastrop |
| 4 | | County? Do you live in Bastrop County? |
| 5 | A. | Yes. |
| 6 | | THE COURT: Will you scoot up |
| 7 | | a little closer to that microphone, ma'am. |
| 8 | | Thank you very much. |
| 9 | Q. | (BY MS. CLAY-JACKSON) Are you a bit nervous |
| 10 | | being here today? |
| 11 | A. | Yes. |
| 12 | Q. | Okay. In fact, are you afraid of being here |
| 13 | | today? |
| 14 | A. | Not really, I'm just nervous. |
| 15 | Q. | Ms. Estes, how long have you lived in Bastrop |
| 16 | | County? |
| 17 | A. | Since 1981. |
| 18 | Q. | Since 1981? |
| 19 | A. | Yeah. |
| 20 | Q. | And do you own a business here in Bastrop |
| 21 | | County? |
| 22 | A. | Yes, ma'am. |
| 23 | Q. | And what is the name of that business? |
| 24 | A. | It's the Cherokee Bar. |
| 25 | Q. | And where is that located? |

1  A.  Off of 1441.
2  Q.  And how long have you had that business?
3  A.  Six and a half years, something like that.
4  Q.  Do you know the young man who is seated to my
5      left?
6  A.  Yes, ma'am.
7  Q.  And who do you know him to be?  What do you
8      know his name to be?
9  A.  Well, there is so many.  I know his mother.
10     I've known his mother for years, and I know
11     him.
12 Q.  Rodney?
13 A.  Yeah.
14 Q.  And how long have you known the family?
15 A.  I would say in Corpus Christi, two years; and
16     in Bastrop, since I've been here.
17 Q.  Did you know a young lady by the name of
18     Stacey Stites?
19 A.  Not very well, just from the grocery store.
20 Q.  You knew her from the grocery store?
21 A.  Yes.
22 Q.  You knew her when you saw her in the grocery
23     store?
24 A.  Yes.
25                    MS. TANNER:  Object as to

```
1          leading.
2                       THE COURT:  Sustained.
3   Q.     (BY MS. CLAY-JACKSON)  Did you know her when
4          you saw her in the grocery store?
5   A.     Sure.
6   Q.     Did you buy groceries at HEB?
7   A.     I'm there almost every day.
8   Q.     I draw your attention back to the first part
9          of the year of 1996.  Do you recall ever
10         seeing Stacey Stites with Rodney Reed?
11  A.     Yes, ma'am.
12  Q.     And where do you recall seeing them?
13  A.     At the grocery store.
14  Q.     Were they together?
15  A.     No.
16  Q.     Were they acting like they were in a
17         conversation?
18  A.     They were talking, that's all.
19                      MS. CLAY-JACKSON:  Pass the
20         witness.
21
22                  CROSS EXAMINATION
23  QUESTIONS BY MS. TANNER:
24  Q.     Ms. Estes, you indicated that you own a bar
25         out on 1441?
```