# Exhibit 20

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| RODNEY REED,<br>　　　　Petitioner | §<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. A-02-CA-142 |
| DOUG DRETKE, Director, Texas<br>Department of Criminal Justice,<br>Institutional Division,<br>　　　　Respondent | §<br>§<br>§<br>§<br>§ | |

## DECLARATION OF ROBERTO J. BAYARDO, M.D.

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

1. My name is Roberto J. Bayardo, M.D. I am over the age of 18 years and fully competent in all respects to make this Declaration. All the facts recited herein are within my personal knowledge and are true and correct. All of the opinions recited herein are expressed within a reasonable degree of medical and/or scientific probability, except where noted.

2. I am a forensic pathologist, and the former Travis County Medical Examiner. I performed the autopsy on Stacy Stites, and testified at the trial of Rodney Reed. I have recently reviewed the following materials:

　　a. The autopsy report on Ms. Stites;

　　b. My trial testimony;

　　c. Excerpts from the trial testimony of Karen Blakely and Meghan Clement; and

　　d. The April 14, 2006 affidavit and June 16, 2010 declaration of Leroy Riddick, M.D.

I am also personally aware that Jimmy Fennell, who was a Giddings police officer at the time of Ms. Stites's death, and was a suspect in her murder, has been convicted of sexual assault while

serving as police officer in Georgetown, Texas and is in prison. Based on the materials identified above, the information concerning Mr. Fennell, and my expertise as a forensic pathologist, I have the following opinions and clarifications.

3. <u>Time of Death</u>. At trial, I testified that I estimated the time of death as 3:00 a.m. on April 23, 1996. Estimates regarding time of death are just that – estimates – and the accuracy of the estimate is subject to various factors, as outlined by Dr. Riddick in paragraphs 10-13 of his April 14, 2006 affidavit. My estimate of time of death, again, was only an estimate, and should not have been used at trial as an accurate statement of when Ms. Stites died. (As I testified, I am unaware of how long it was between the time of death and the time her body was brought to the Travis County Medical Examiner's office.) If the prosecuting attorneys had advised me that they intended to use my time of death estimate as a scientifically reliable opinion of when Ms. Stites died, I would have advised them not to do so. In my professional opinion, pinpointing a precise time of exactly when Ms. Stites died would have been, and remains, impossible.

4. <u>Survival of Sperm</u>. At trial, I testified that the very few spermatozoa I found in Ms. Stites's vaginal cavity had been deposited there "quite recently." Ms. Blakely testified that spermatozoa can remain intact in the vaginal cavity for no more than 26 hours; and Ms. Clement testified that spermatozoa can remain intact for no more than 24 hours. I question the qualifications of these witnesses to offer this testimony, and in any event, they are incorrect. I am personally aware of medical literature finding that spermatozoa can remain intact in the vaginal cavity for days after death. Accordingly, in my professional opinion, the spermatozoa I found in Ms. Stites's vaginal cavity could have been deposited days before her death. Further, the fact that I found "very few" (as stated in the autopsy report) spermatozoa in Ms. Stites's vaginal cavity suggests that the spermatozoa was not deposited less than 24 hours before Ms. Stites's

2

death. If the prosecuting attorneys had advised me that they intended to present testimony that spermatozoa cannot remain intact in the vaginal cavity for more than 26 hours, and argue that Ms. Stites died within 24 hours of the spermatozoa being deposited, I would have advised them that neither the testimony nor the argument was medically or scientifically supported.

5. <u>Sperm Not Found in Rectum</u>. I reported in the autopsy report and testified at trial that rectal smears taken of Ms. Stites were negative for spermatozoa and seminal fluid. Upon direct examination, I did testify that under a microscope, the rectal smears showed what appeared to be the heads of spermatozoa. However, the smears were insufficient to conclude that spermatozoa were present in the rectum. Accordingly, I reported the smears as negative on the autopsy report. My trial testimony should not have been construed as suggesting that spermatozoa were indeed found in Ms. Stites's rectal cavity. Had the prosecuting attorneys advised me that they intended to present my testimony as evidence that spermatozoa was found in Ms. Stites's rectal cavity, I would have informed them that that was incorrect. An autopsy report is the result of scientifically valid, forensic pathology methods. Trial testimony is given in response to the questions asked. Had I been asked at trial if spermatozoa and/or seminal fluid had been found in Ms. Stites's rectal cavity, I would have said that it had not, consistent with the autopsy report.

6. <u>Sexual Assault</u>. I found on autopsy that Ms. Stites was sexually assaulted, and testified consistently at trial. However, the presence of spermatozoa in Ms. Stites's vaginal cavity was not evidence of sexual assault. There was no indication that the spermatozoa in Ms. Stites's vaginal cavity was placed there in any fashion other than consensually. Also, because there was no spermatozoa found in Ms. Stites's rectal cavity, there is no evidence that any spermatozoa was deposited in the rectal cavity as a result of the sexual assault. In my

3

professional opinion, Ms. Stites was sexually assaulted in her anal cavity, and that assault did not result in the deposit of any spermatozoa. The injuries to Ms. Stites's anus are certainly consistent with penile penetration, as I testified, but if there was penile penetration, there was no ejaculation. I understand that the sexual assault for which Mr. Fennell was convicted did not involve ejaculation. This is consistent with the sexual assault on Ms. Stites. Further, the injuries to Ms. Stites's anus are more consistent with penetration by a rod-like instrument, such as a police baton.

7. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 13, 2012.

_____
Roberto J. Bayardo, M.D.