# Exhibit 34

Cause No. WR-50,961-10
Cause No. 8701

| STATE OF TEXAS | § | IN THE 21ST DISTRICT COURT |
| | § | |
| v. | § | OF |
| | § | |
| RODNEY REED | § | BASTROP COUNTY, TEXAS |

## STATE'S RESPONSE IN OPPOSITION TO
## MOTION FOR DISCOVERY

Applicant, Rodney Reed, seeks discovery. Because the Court either possesses no authority to grant certain of Applicant's requests, or because the requests are irrelevant or abusive, the State opposes.

## STATEMENT OF THE CASE

### I.     Procedural history

Applicant's conviction and sentence were formalized to a judgment on May 30, 1998. 1.CR.489–493. That judgment was affirmed on direct appeal by the CCA on December 6, 2000, *Reed v. State*, No. 73,135 (Tex. Crim. App. Dec. 6, 2000) (*Reed I*), and the Supreme Court denied Applicant a writ of certiorari later that next year, *Reed v. Texas*, 534 U.S. 955 (2001).

With direct appeal pending, Applicant filed his initial application for state habeas relief on November 15, 1999. 2.SHCR-01/02, at 2–251.[1] A little

---

[1]     "SHCR-01/02" refers to the clerk's record for Applicant's first and second state habeas proceedings. The references are preceded by volume number and followed by page numbers.

more than a year later, Applicant filed a "supplemental claim." 3.SHCR-01/02, at 391–402. On February 13, 2002, the CCA denied Applicant's initial application on findings by the trial court sitting and found the "supplemental claim" to be a subsequent application and dismissed it as abusive. *Ex parte Reed*, Nos. 50,961-01, 50,961-02 (Tex. Crim. App. Feb. 13, 2002) (*Reed II*).

Applicant turned to federal court on February 13, 2003, filing a petition for writ of habeas corpus in the Western District of Texas, Austin Division. Petition for a Writ of Habeas Corpus, *Reed v. Thaler*, No. A-02-CV-142-LY (W.D. Tex. Feb. 13, 2003), ECF No. 33. The case was stayed and placed in abeyance on March 1, 2004, so that Applicant could exhaust certain claims through the state system. Order, Mar. 1, 2004, *Reed v. Thaler*, No. A-02-CV-142-LY (W.D. Tex. Mar. 1, 2004), ECF No. 114. Applicant thereafter proceeded to file four additional state habeas applications.

On March 29, 2005, Applicant filed his third state habeas application. 1.SHCR-03, at 2–343. [2] On October 19, 2005, the CCA dismissed all of Applicant's claims as abusive, except two claims that were remanded to the trial court for further development. *Ex parte Reed*, No. WR-50961-03, 2005 WL 2659440, at *1 (Oct. 19, 2005) (*Reed III*). After an evidentiary hearing and

---

[2] "SHCR-03" refers to the clerk's record for Applicant's third state habeas proceeding. The references are preceded by volume number and followed by page numbers.

findings from the trial court, the CCA issued an exhaustive opinion denying relief and finding that Applicant's gateway-innocence claim was not persuasive enough to overcome the untimeliness of his procedurally defaulted claims. *Ex parte Reed*, 271 S.W.3d 698 (Tex. Crim. App. 2008) (*Reed IV*).

With his third state habeas application pending, Applicant filed his fourth and fifth state habeas applications on March 5, 2007, and July 16, 2008, respectively. SHCR-04, at 2–15;[3] SHCR-05, at 2–89.[4] Both applications were dismissed as abusive by the CCA in a single opinion. *Ex parte Reed*, Nos. WR-50,961-04, WR-50,961-05, 2009 WL 97260, at *1–6 (Tex. Crim. App. Jan. 14, 2009) (*Reed V*).

After those proceedings terminated, Applicant filed his sixth state habeas application on April 21, 2009. SHCR-06, at 2–59.[5] This, too, was dismissed as abusive by the CCA. *Ex parte Reed*, No. WR-50961-06, 2009 WL 1900364, at *1–2 (Tex. Crim. App. July 1, 2009) (*Reed VI*).

The stay in federal district court was lifted on August 20, 2009. Order, Aug. 20, 2009, *Reed v. Thaler*, No. A-02-CV-142-LY (W.D. Tex. Aug. 20, 2009),

---

[3]     "SHCR-04" refers to the clerk's record for Applicant's fourth state habeas proceeding. The references are followed by page numbers.

[4]     "SHCR-05" refers to the clerk's record for Applicant's fifth state habeas proceeding. The references are followed by page numbers.

[5]     "SHCR-06" refers to the clerk's record for Applicant's sixth state habeas proceeding. The references are followed by page numbers.

ECF No. 135. On June 15, 2012, a federal magistrate judge recommended denial of relief, Report and Recommendation of the United States Magistrate Judge, *Reed v. Thaler*, No. A-02-CV-142-LY, 2012 WL 2254217 (W.D. Tex. June 15, 2012) (*Reed VII*), which the district judge largely adopted and who independently denied relief on September 26, 2012, Order on Report and Recommendation, *Reed v. Thaler*, No. A-02-CV-142-LY (W.D. Tex. Sept. 26, 2012), ECF No. 177. The district judge also denied or overruled all of Applicant's post-judgment filings on February 4, 2013. Order, Feb. 4, 2013, *Reed v. Thaler*, No. A-02-CV-142-LY (W.D. Tex. Feb. 4, 2013), ECF No. 191.

Applicant then appealed the denial of federal habeas relief, but the Court of Appeals for the Fifth Circuit affirmed on January 10, 2014. *Reed v. Stephens*, 739 F.3d 753 (5th Cir. 2014) (*Reed VIII*). On March 19, 2014, the same court also rejected Applicant's petitions for rehearing. On Petition for Rehearing and Rehearing En Banc, *Reed v. Stephens*, 739 F.3d 753 (5th Cir. Mar. 19, 2014) (No. 13-70009). The Supreme Court denied Applicant's petition for writ of certiorari on November 3, 2014. *Reed v. Stephens*, 135 S. Ct. 435 (2014).

On July 14, 2014, Applicant filed a motion for postconviction DNA testing under Chapter 64 of the Texas Code of Criminal Procedure. 2.CR(DNA).74–106.[6] This motion was filed the same day that the trial court

---

[6] "CR(DNA)" refers to the clerk's record for Applicant's Chapter 64 proceeding. The references are preceded by volume number and followed by page numbers.

set an original date for Applicant's execution. 2.CR(DNA).149–50. After holding an evidentiary hearing on Applicant's Chapter 64 motion, the trial court denied it for the reasons it set out in its December 12, 2014 findings. 3.CR(DNA).342–48. Applicant appealed. 3.CR(DNA).359.

On February 18, 2015, slightly more than two weeks before his then-scheduled execution, Applicant filed his seventh state habeas application. 1.SHCR-07, at 8–84.[7] On February 23, 2015, the CCA stayed Applicant's execution. Order, *Ex parte Reed*, No. WR-50,961-07, 2015 WL 831673 (Tex. Crim. App. Feb. 23, 2015). Then, on June 7, 2016, Applicant filed his eighth state habeas application. SHCR-08, at 5–23.[8]

On April 12, 2017, the CCA affirmed the trial court's denial of postconviction DNA testing. *Reed v. State*, 541 S.W.3d 759, 780 (Tex. Crim. App. 2017) (*Reed IX*). The CCA also denied Applicant's motion for rehearing. Order, Oct. 4, 2017, *Reed v. State*, 541 S.W.3d 759 (Tex. Crim. App. Oct. 4, 2017) (No. AP-77,054). On June 25, 2018, the Supreme Court denied Applicant a writ of certiorari. *Reed v. Texas*, 138 S. Ct. 2675 (2018).

---

[7]   "SHCR-07" refers to the clerk's record for Applicant's seventh state habeas proceeding. The references are followed by page numbers.

[8]   "SHCR-08" refers to the clerk's record for Applicant's eighth state habeas proceeding. The references are followed by page numbers.

On May 17, 2017, the CCA dismissed Applicant's seventh state habeas application as an abuse of the writ but remanded two claims from his eighth state habeas application for further development. *Ex parte Reed*, Nos. WR-50,961-07, WR-50,961-08, 2017 WL 2131826, at *1–2 (Tex. Crim. App. May 17, 2017) (*Reed X*). A hearing was held on the remanded claims and the trial judge recommended denial of relief. Suppl.SHCR-08, at 152–75.[9]

On June 26, 2018, the day after the Supreme Court denied further review in Applicant's Chapter 64 proceeding, Applicant filed his ninth state habeas application. SHCR-09, at 4–56.[10] Exactly one year later, on June 26, 2019, the CCA denied Applicant's remanded claims from his eighth application and dismissed the rest. *Ex parte Reed*, No. WR-50,961-08 & WR-50,961-09, 2019 WL 2607452, at *2 (Tex. Crim. App. June 26, 2019) (*Reed XI*). In that same order, the CCA found Applicant's ninth application to be abusive and dismissed it too. *Id*.

On July 23, 2019, the trial court again set an execution date for Applicant. Execution Order, *State v. Reed*, No. 8701 (21st Dist. Ct., Bastrop County, Tex. Jul. 23, 2019). On November 11, 2019, Applicant filed his tenth

---

[9]     "Suppl.SHCR-08" refers to the supplemental clerk's record for Applicant's eight state habeas proceeding. The references are followed by page numbers.

[10]     "SHCR-09" refers to the clerk's record for Applicant's ninth state habeas proceeding. The references are followed by page numbers.

state habeas application. Appl. 1–94. The CCA stayed Applicant's execution and remanded three claims to this Court for further development. *Ex parte Reed*, No. WR-50,961-10, 2019 WL 6114891, at *2 (Tex. Crim. App. Nov. 15, 2019) (*Reed XII*).

After remand, the State filed its answer on April 15, 2020, opposing relief on all of Applicant's claims. Answer 1–58. Applicant moved for an order designating issues, Mot. Entry Prop. Order Desig. Issues 1–9, which the State partially opposed, State's Resp. Mot. Entry Order Desig. Issues 1–9. On June 17, 2020, the Court entered a memorandum ruling and order designating issues and setting an evidentiary hearing. Mem. Ruling & Order 1–2.

## II. Applicant's present discovery request

Applicant asks for three forms of discovery: (1) twenty-nine requests for admission;[11] (2) nineteen interrogatories; and (3) ten requests for document production. Mot. Disc. Ex. 1. He justifies his requests for interrogatories and admissions by claiming that they will narrow the issues at the hearing. Mot. Disc. 6–7. He justifies his third request, primarily, by claiming it is relevant to his actual innocence case. *Id*. at 7–11. The State will address these requests individually and below.

---

[11]     Applicant has two requests for admissions labeled 27. Mot. Disc. Ex. 1, at 8. The State refers to the first 27 as 27(a) and the second 27 as 27(b).

**ARGUMENT**

## I.    There Is No Authority to Order Admissions.

Applicant seeks to have the State answer twenty-eight requests for admission. Mot. Disc. Ex. 1, at 3–8. He, however, fails to supply the Court with authority to grant such discovery. Rather, he lists, without argument and explanation, three statutes to support this request. Mot. 1 (citing Tex. Code Crim. Proc. arts. 11.071, 38.43, & 39.14). None of these provide the Court with such authority, and no other basis exists, so discovery would be improper.

Most obviously inapplicable is Article 38.43. That article concerns the preservation of biological material and requiring certain pretrial DNA testing in a capital murder case in which the State seeks death. Tex. Code Crim. Proc. art. 38.43(a)–(m). But that is plainly not a discovery statute. At best, it "grants certain discretion in the trial court to regulate *pre-trial* DNA testing[.]" *In re Best*, Nos. WR-89,923-01 & WR-89,923-02, 2021 WL 359693, at *4 (Tex. Crim. App. Feb. 3, 2021) (emphasis added). Setting aside the obvious temporal problem with Article 38.43's applicability, the DNA testing provisions of this statute, the only ones that could possibly be construed as discovery related, do not apply for another reason—this is not "a trial that commences on or after [September 1, 2013,] the effective date of this Act." Act of May 22, 2013, 83d Leg., R.S., ch. 1349, § 2, 2013 Tex. Sess. Law Serv. Ch. 1349. Thus, Article

38.43 provides no basis on which any discovery could be ordered here, let alone requests for admission.

Next, Article 39.14 allows for the "discovery of *tangible objects* that are not privileged and that are in the State's possession." *In re Watkins*, 369 S.W.3d 702, 707 (Tex. App.—Dallas 2012, no pet.) (emphasis added); *see also Tope v. State*, 429 S.W.3d 75, 82 (Tex. App.—Houston [1st Dist.] 2014, no pet.). But it does not "provide for . . . the whole host of other discovery mechanisms available in civil proceedings." *Pope v. State*, 207 S.W.3d 352, 360 n.28 (Tex. Crim. App. 2006). Applicant's request for admissions clearly falls outside the scope of this article. *See Nelson v. State*, Nos. 01-17-00746-CR to 01-17-00748-CR, 2018 WL 6495171, at *13 (Tex. App.—Houston [1st Dist.] Dec. 11, 2018, pet. ref'd) ("Article 39.14 does not require the State to comply with general tools of discovery used in civil cases, such as the requests for admissions[.]").

Finally, Article 11.071, provides no basis for admissions either. While it does permit some forms of factual resolution, including "affidavits, depositions, interrogatories, and evidentiary hearings," Tex. Code Crim. Proc. art. 11.071 § 9(a), noticeably absent is requests for admission. As such, none of the statutes that Applicant contends empower this Court to order requests for admissions apply, and no other such statute exists, so the admissions requests must be denied.

## II. There Is No Authority to Order Interrogatories Against the State.

Applicant next seeks answers by the State to nineteen interrogatories. Mot. Disc. Ex. 1, at 9–12. Again, like with requests for admissions, there is no authority to order interrogatories directed at the State.

As described above, neither Article 38.43 nor Article 39.14 provide a basis for ordering interrogatories. *See supra* Argument I. And, while Article 11.071 does mention interrogatories, that too is inapplicable. For one, Section 9 of Article 11.071 lists ways to *resolve* disputed factual issues. Tex. Code Crim. Proc. art. 11.071 § 9(a). For example, a habeas court may "resolve" a "controverted, previously unresolved factual issue[]" through affidavits or evidentiary hearings. *Id*. But Section 9 does not provide a mechanism to discover a party's case en route to another resolution mechanism. For example, it does not allow Applicant to discover the State's case via interrogatory so that the facts may then be resolved at an evidentiary hearing. Section 9 is not a discovery statute, it is a list of ways in which factual disputes may be *resolved*.

For another, the Code of Criminal Procedure discusses interrogatories in only a few places other than the habeas statutes and those instances make clear that interrogatories are of *witnesses*. *See* Tex. Code Crim. Proc. art. 38.071 (discussing interrogatories for child witnesses); 39.06 (describing interrogatories of witnesses in lieu of depositions); 52.02 (describing

interrogatories for affiants at a court of inquiry). The State is a party, not a witness, and there is no reason to believe that Article 11.071's use of the term "interrogatories" was meant to deviate from the other provisions of the Code of Criminal Procedure. This is especially true since Articles 39.06 and 52.02 were enacted some thirty years before Article 11.071, and the Legislature is presumed to have known of criminal interrogatory practice before using that term in Article 11.071. *See, e.g.*, *Acker v Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990) ("A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.").

Indeed, Article 39.14 is the exclusive authority for discovery of items in the State's possession. *See, e.g.*, *Shpikula v. State*, 68 S.W.3d 212, 222 (Tex. App.—Houston [1st Dist.] 2002, pet ref'd). And, again, that statute does not "provide for . . . the whole host of other discovery mechanisms available in civil proceedings." *Pope*, 207 S.W.3d at 360 n.28. Applicant is trying to convert a criminal proceeding into a civil one. That is improper and his request for interrogatories in that pursuit must be denied as unauthorized.

## III. Assuming Authority Exists, the Court Should Not Grant Applicant's Requests for Admissions and Interrogatories.

### A. Requests for admissions 1–11, 16–18, and 21–23, and interrogatories 3 and 16

Requests for admissions 1 through 11, 16 through 18, and 21 through 23, and interrogatories 3 and 16, all deal with DNA matters, like whether certain

evidence has been tested or not. Mot. Disc. Ex. 1, at 3–4, 6–7, 9, 12. That is totally irrelevant to this proceeding. Applicant attempted to obtain postconviction DNA testing via Chapter 64 of the Code of Criminal Procedure and the CCA upheld the denial of testing. *Reed IX*, 541 S.W.3d at 769–80. Applicant cannot be permitted to relitigate that proceeding as the law of the case doctrine precludes it. *See State v. Swearingen*, 424 S.W.3d 32, 35–36 (Tex. Crim. App. 2014).

Moreover, Applicant says these DNA-related requests for admissions and interrogatories are "focused on issues that are relevant to the Court's inquiry," Disc. Mot. 7, but he does not explain this. They are certainly not relevant to Applicant's *Brady* and false evidence claims, which have nothing to do with DNA. That leaves Applicant's actual innocence claim, but he made no allegation in his application that the lack of testing provided a basis for relief. Because he did not plead such an allegation, he cannot present evidence, or obtain discovery, on it—to do so would be to entertain a subsequent habeas application. This is because capital habeas applicants are not permitted to amend their applications as any amendment is itself a subsequent application. *See, e.g.*, *Ex parte Eldridge*, WR-60,478-01, 2005 WL 8154074, at *1 (Tex. Crim. App. Feb. 9, 2005) ("Article 11.071 § 5(f), directs that an untimely amendment or supplement to a timely filed application will be treated as a subsequent application[.]"). Indeed, Applicant attempted to raise a "supplemental claim"—

a functional amendment—in his initial application and it was deemed subsequent. *Reed II*, slip op. at 2. And the CCA has repeatedly dismissed claims of actual innocence when Applicant added "new" evidence. *See, e.g.*, *Reed V*, 2009 WL 97260, at *1–6. To allow Applicant to obtain discovery and present evidence on a lack-of-DNA-testing theory of innocence, if that is in fact the basis for this discovery request, would be a functional amendment of his present application and cannot be permitted as only the CCA has such authority. But because Applicant deprived the CCA of passing upon this innocence theory by not pleading it, the CCA could not have remanded it. Because the Court has no jurisdiction to consider this theory and because it is not before the Court, discovery is improper.

Finally, as it relates to Applicant's DNA-related requests for admissions and interrogatories, and assuming they are related to Applicant's actual innocence claim, whether certain items were DNA tested or not was discoverable at the time of trial. As such, it cannot be considered as evidence of actual innocence. *See Ex parte Brown*, 205 S.W.3d 538, 545 (Tex. Crim. App. 2006) ("[An applicant] must also prove that the evidence he relies upon is 'newly discovered' or 'newly available.' The term 'newly discovered evidence' refers to evidence that was not known to the applicant at the time of trial and could not be known to him even with the exercise of due diligence."). And whether DNA testing would have occurred in 2020 had Stacey Stites been

hypothetically murdered that year, or whether the Applicant has been denied postconviction DNA testing, has absolutely no bearing on his innocence. As such, these requests for admissions and interrogatories should be denied.

## B. Requests for admissions 12–14, and 28, and interrogatories 4–5, 7–15, and 17–19

Requests for admissions 12 through 14, and 28, and interrogatories 4 through 5, 7 through 15, and 17 through 19 deal with forensic matters, like the victim's time of death. Mot. Disc. Ex. 1, at 5, 8–12. Again, Applicant does not explain how these are relevant to any of his claims. Engaging in that inquiry, they certainly have no bearing on his *Brady* and false evidence claims, so he must rely on his actual innocence claim. But Applicant has pleaded these contentions of innocence many times before and the CCA has rejected them on a lower standard of proof. *See, e.g.*, *Reed X*, 2017 WL 2131826, at *1. The Court cannot reopen what the CCA has rejected.

Moreover, the Court cannot consider any evidence regarding these matters because Applicant has not pleaded that it was not discoverable at the time of trial. Indeed, none of Applicant's experts have claimed that they could not have rendered their opinions at the time of Applicant's trial, and the timing inference to be draw by morphologically intact sperm was discussed at trial. *Reed IV*, 271 S.W.3d at 750. As such, such evidence cannot be considered in

contention with Applicant's actual innocence claim, *see Ex parte Brown*, 205 S.W.3d at 545, and no discovery should be permitted.

### C.    Request for admission 15

Applicant's request for admission 15 asks whether, had the victim died in 2020, investigators would have searched the apartment she shared with her fiancé. Disc. Mot. Ex. 1, at 5. Applicant has not pled a theory of actual innocence based on 2020 standards, so it is a subsequent application and cannot be considered. Moreover, something not pled could not have been remanded by the CCA, so it is not an issue before the Court. *See supra* Argument III(A). And whether investigators searched the apartment in 1996 was a matter discussed at trial, 46.RR.162, so it cannot be considered new for actual innocence purposes, *see Ex parte Brown*, 205 S.W.3d at 545. Accordingly, discovery should be denied.

### D.    Requests for admissions 19–20

Applicant's requests for admissions 19 and 20 are effectively requests for concessions that Applicant is entitled to relief on his actual innocence claim. Mot. Disc. Ex. 1, at 6. The State has filed an answer denying that relief is warranted. Nothing more should be required.

### E.    Request for admission 24

Applicant's request for admission 24 asks whether forensic or other evidence places him at the locations where the pickup truck or the body were

found. Mot. Disc. Ex. 1, at 7. Such matters were discussed at trial, *see, e.g.*, 47.RR.43, 47.RR.97, so this is not evidence that can be considered in determining actual innocence, *see Ex parte Brown*, 205 S.W.3d at 545. Moreover, because it was discussed at trial, it was necessarily considered by the CCA when reviewing Applicant's prior allegations of actual innocence, so it cannot be considered anew. *See supra* Argument III(A). No discovery on such point should therefore be permitted.

## F.      Requests for admissions 25–26 and interrogatory 6

Applicant's requests for admissions 25 and 26, and interrogatory 6 are also effectively requests for concessions that Applicant was having a clandestine affair with the victim. Mot. Disc. Ex. 1, at 7–8, 10. This matter has been litigated ad nauseum and rejected repeatedly by the CCA. *See, e.g.*, *Reed IV*, 271 S.W.3d at 748–50. Moreover, allegations of a clandestine affair were brought up at trial, *see, e.g.*, 43.RR.69, so once more, Applicant cannot use this evidence for purposes of actual innocence, *see Ex parte Brown*, 205 S.W.3d at 545. Accordingly, these requests for admissions and an interrogatory should be denied.

## G.      Requests for admissions 27(a)–27(b)

Applicant asks the State to admit whether the Bastrop County Criminal District Attorney's Office convened a grand jury on whether to indict the victim's fiancé, Jimmy Fennell. Mot. Disc. Ex. 1, at 8. Whether such occurred

or not, it would have no relevance to any of Applicant's claims. Namely, a grand jury proceeding, and any finding from that proceeding, is not evidence of anything, as juries are so often told. Further, Applicant has not pled that any such proceeding or finding has any bearing on any of his claims, so it cannot be considered by the Court. *See supra* Argument III(A). Consequently, these requests for admissions should be denied.

## H. Interrogatory 1

Applicant's first interrogatory is merely an extension of his requests for admission wherein he asks the State to provide the basis for any request the State denies. Mot. Disc. Ex. 1, at 9. For the same reasons as the individual requests for admissions should be denied, so too should the Court deny interrogatory 1.

## I. Interrogatory 2

Finally, in interrogatory 2 Applicant requests that the State "[i]dentify all persons who you believe have knowledge of relevant facts and identify the issues upon which you believe they have knowledge." Mot. Disc. Ex. 1, at 9. If the Rules of Civil Procedure applied, which they do not, this request would be improper as vague and overbroad. *See In re Master Flo Valve Inc.*, 485 S.W.3d 207, 218 (Tex. App.—Houston [14th Dist.] 2016) ("A request for all evidence that supports an opposing party's allegations, but which does not identify any particular class or type of documents, is an improper request to be allowed to

generally peruse all evidence the opposing party might have; such a request is vague and overbroad."). Consequently, this interrogatory should be denied.

### J. Interrogatories generally

As a global matter, Applicant's interrogatories should be denied because they ask the State to create evidence. For example, to answer interrogatory 3, the State would have to create a list of the items subjected to DNA testing and then explain why such testing occurred. Disc. Mot. Ex 1, at 9. That is a document that does not exist. Whatever discretion a trial court may have regarding discovery, 'it does not extend to the point of ordering the State to create or generate evidence that does not otherwise exist This Court has plainly said that a trial court does not have the authority to do *that*." *In re Best*, 2021 WL 359693, at *4. But Applicant is not without recourse. When the State agreed to DNA testing, part of that agreed order required the Department of Public Safety's (DPS's) Crime Laboratory Division to provide "all reports, notes, and data (including electronic data) from its prior forensic testing," along with the same information for the testing that occurred pursuant to that agreement. Agreed Order 3, *State v. Reed*, No. 8701 (21st Dist. Ct. Bastrop County, Tex. July 14, 2014). Applicant can, from that information, determine what has and what has not been tested. He is entitled to no more, nor should this Court order more.

## IV.    The Production of Documents.

Applicant seeks ten categories of documents. Disc. Mot. Ex. 1, at 13. The State had more than an open file policy at trial, providing not only access to the State's file, but copying it for Applicant's defense counsel. 3.RR.18; 7.RR.7. The open file policy has continued since and, indeed, Applicant's attorneys have taken advantage of that policy multiple times, reviewing the file on numerous occasions and obtaining copies of whatever was requested. Further, as mentioned above, the State, in agreeing to postconviction DNA testing, also agreed to an order requiring DPS's Crime Laboratory Service and the Travis County Medical Examiner to produce all information regarding forensic testing conducted by the respective entities. On top of that, before the evidentiary hearing on the eighth application, Applicant requested all documents relating to the victim's murder investigation directly from DPS's Ranger Division, the Bastrop County Sheriff's Office, and the Bastrop Police Department and received them. And, when new exculpatory or mitigating evidence has come into the possession of the State, that information has been shared with Applicant, about a dozen times in the past seven years. His requests for production of documents, at this point, are duplicative and abusive, and should be denied.

Nonetheless, the State will discuss the requests one by one. The first concerns documents utilized in answering the requests for admissions and

interrogatories. Mot. Disc. Ex. 1, at 13. But because the Court cannot, or alternatively should not, grant such requests, no documents can or should be produced.

The second request seeks all documents that the State may use at the hearing. Mot. Disc. Ex. 1, at 13. The State does not understand this request since Applicant has already agreed to a joint scheduling order in which the State will provide copies of the exhibits it intends to use at the hearing about two weeks before the hearing. The State does not have to preview its case, and there is no authority for requiring it to do so, but has agreed to do so within the timeframe agreed to by Applicant. To do anything more would be duplicative and abusive.

The third, fourth, and fifth requests all concern documents relating to a "grand jury that investigated Jimmy Fennell for the murder of Stacey Stites." Mot. Disc. Ex. 1, at 13. The State has no knowledge of such a grand jury and does not possess any such documents.

The sixth concerns documents related to the Mary Ann Arldt case. Mot. Disc. Ex 1, at 13. The State has provided or made those documents available to Applicant.

The seventh concerns "documents relating to the State's decision not to continue to investigate Jimmy Fennell for the murder of Stacey Stites and

investigate Reed instead." Mot. Disc. Ex. 1, at 13. The State has provided or made those documents available to Applicant.

The eighth concerns documents relating to any forensic review "the State, any consultant, or any expert acting on its behalf has conducted" since the time of Stites's murder to the present. Mot. Disc. Ex. 1, at 13. The State has provided or made those documents available to Applicant from DPS's Crime Laboratory Service or the Travis County Medical Examiner. If the State calls any additional experts, it will abide by the notice provisions agreed to by Applicant in the scheduling order.

The ninth concerns the "bus and taxi schedules" referred to in the 20/20 special, "Girl in the Woods." Mot. Disc. Ex. 1, at 13. The State does not possess such documentation.

The tenth and final is for manuals or guidelines regarding the investigation of violent crimes in the possession of Giddings, Bastrop County, and or DPS. Mot. Disc. Ex. 13–14. Applicant requested these documents before the hearing arising from his eighth application and he was provided them. Moreover, any such documents—because they are requested from the time of trial—cannot be considered for purposes of actual innocence because it is not new. *See Ex parte Brown*, 205 S.W.3d at 545. Thus, the request should be denied.

## CONCLUSION

The State respectfully requests that the Court deny Applicant the discovery he seeks.

Respectfully submitted,

BRYAN GOERTZ
Criminal District Attorney
Bastrop County, Texas

 /s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General/
Assistant District Attorney
Bastrop County, Texas
State Bar No. 24047707

Post Office Box 12548, Capitol Station
Austin, Texas 78711
(512) 936-1400
(512) 320-8132
matthew.ottoway@oag.texas.gov

*Attorneys for the State*

## CERTIFICATE OF SERVICE

I certify that on February 5, 2021, a true and correct copy of the foregoing document was served through the District Attorney's electronic service provider and the Court's electronic filing manager to all counsel of record:

Andrew F. MacRae
LEVATINO PACE PLLC
1101 S. Capital of Texas Hwy. Ste. K125
West Lake Hills, Texas 78746
*andrew@lpfirm.com*

Michelle Davis
ATTORNEY AT LAW
1000 Louisiana St., Ste. 6800
Houston, Texas 77002
*michelle.davis@probonolaw.com*

/s/ Matthew Ottoway
MATTHEW OTTOWAY
Assistant Attorney General/
Assistant District Attorney
Bastrop County, Texas